UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARVER THOMAS ASKEW,

      Petitioner,

v.                            Case No. 3:21-cv-301-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Carver Thomas Askew, an inmate of the Florida penal system, initiated this action on March 11, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Askew challenges two 2010 state court (Duval County, Florida) judgments of conviction for attempted burglary and burglary. He raises eight grounds for relief. See Petition at 12–40. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 11). They also submitted exhibits. See Docs. 11-1 through 11-57. Askew filed a notice that he did not

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

intend to file a reply, but instead would rely on the allegations and claims stated in the Petition. <u>See</u> Notice (Doc. 13). This action is ripe for review.

## II. Relevant Procedural History

On September 22, 2009, the State of Florida charged Askew by information with one count of attempted burglary in Duval County Case No. 16-2009-CF-11922-AXXX-MA, Doc. 11-15 at 24, and on September 30, 2009, charged Askew with one count of burglary in Duval County Case No. 16-2009-CF-12286-AXXX-MA, Doc. 11-16 at 22. The trial court consolidated the cases for trial, Doc. 11-15 at 33–34, and on December 9, 2009, a jury found Askew guilty of both charges. <u>Id.</u> at 45; Doc. 11-16 at 32. On January 7, 2010, the trial court designated Askew to be a habitual felony offender (HFO) and sentenced him to a ten-year term of imprisonment for attempted burglary and to a consecutive five-year term of imprisonment for burglary. Docs. 11-15 at 80–85; 11-16 at 69–74.

On direct appeal, with the benefit of counsel, Askew filed an initial brief, arguing the trial court erred when it: (1) denied the defense's motion to sever the charges for trial; (2) denied the defense's motion to exclude <u>Williams</u>[3] Rule evidence; and (3) imposed consecutive HFO sentences. Doc.

---

[3] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

11-18 at 2–21. The State filed an answer brief, Doc. 11-19 at 2–15, and Askew replied, Doc. 11-20 at 2–9. The First DCA per curiam affirmed Askew's convictions and sentences without a written opinion on August 13, 2010, Doc. 11-21 at 2, and issued the mandate on August 31, 2010, <u>id.</u> at 4.

On May 31, 2011, Askew filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 11-39 at 5–18. In his Rule 3.850 Motion, Askew alleged counsel was ineffective when she failed to: properly advise Askew about his right to testify at trial (ground one); request a limiting instruction when the State introduced evidence of the burglary (ground two); investigate and file a motion to suppress evidence (ground three); and investigate and file a motion to suppress the State witness's identification of Askew as the burglar (ground four). Doc. 11-39 at 5–13. Askew also alleged the trial court lacked jurisdiction to convict and sentence him (ground five). <u>Id.</u> at 14–17. On August 27, 2012, the postconviction court summarily denied relief on all grounds. Doc. 11-50 at 67–83. On February 27, 2019, the First DCA per curiam affirmed the summary denial of grounds two through four, reversed the summary denial of ground one, and remanded for the postconviction court to conduct an

evidentiary hearing. Doc. 11-42 at 2–3. The First DCA issued the mandate on March 27, 2019. Doc. 11-43 at 2.

On remand, the postconviction court conducted an evidentiary hearing, after which it denied ground one. Doc. 11-52 at 75–77. Askew pursued an appeal. On January 12, 2021, the First DCA per curiam affirmed the denial of relief without a written opinion, Doc. 11-57 at 2, and on March 17, 2021, issued the mandate, <u>id.</u> at 4.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the

4

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Askew's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>abrogation recognized on other grounds by</u> <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

5

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined §

7

2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting

8

Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a
> state prisoner must exhaust available state remedies,
> 28 U.S.C. § 2254(b)(1), thereby giving the State the
> """opportunity to pass upon and correct" alleged

> violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365–366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748, 111 S. Ct. 2546;

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

> Sykes,[5] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.

---

[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him'

---

⁶ <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

12

of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not

> functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

14

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." <u>Id.</u> (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the <u>Strickland</u> standard was
> incorrect but whether that determination was
> unreasonable — a substantially higher threshold."
> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that
> counsel satisfied <u>Strickland</u>'s deferential standard,"
> then a federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference—this one to a state court's decision—when we are

considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>
<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Askew alleges the trial court erred when it denied the
defense's motion to sever the burglary and attempted burglary charges.
Petition at 12. He argues that consolidation of the charges denied him a fair
trial because the State "was permitted to use the evidence that the Petitioner
may also have committed another crime to 'tip the scales.'" <u>Id.</u> at 15. Askew
raised a substantially similar claim on direct appeal, Doc. 11-18 at 12–15; the
State filed an answer brief, Doc. 11-19 at 7–8; and the First DCA per curiam
affirmed Askew's convictions and sentences without a written opinion, Doc.
11-21 at 2.

The Court determines that Askew did not fairly present the federal
nature of his claim to the state court. The record demonstrates that in his
initial brief on direct appeal, Askew argued the trial court erred when it
denied the defense's motion to sever because "[e]ach of these offenses could
have been adequately and intelligently described to the jury without
reference to the other offense," and the offenses were not "inextricably

16

intertwined" under Florida law. Doc. 11-18 at 14. Askew included only a single citation to the Fourteenth Amendment in his issue statement, id. at 12, which amounts to no more than "makeshift needles in the haystack of the state court record." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (internal quotation marks omitted). Therefore, he did not alert the state court to the federal nature of his claim, and in failing to do so, deprived the state court of a meaningful opportunity to review the claim. See Baldwin v. Reese, 541 U.S. 27, 29 (2004). Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Askew has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, Ground One is due to be denied.

Nevertheless, even if Askew properly exhausted this claim, he is still not entitled to relief. In its appellate brief, the State addressed this claim on the merits, Doc. 11-19 at 7–8; therefore, the appellate court may have affirmed Askew's convictions based on the State's argument. If the appellate court addressed the merits of this claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an

17

unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Askew is not entitled to relief on the basis of this claim.

Assuming <u>arguendo</u> the appellate court's adjudication of this claim is not entitled to deference, it is still without merit. "On habeas corpus attack of the State Trial Court's denial of severance, (t)he simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C.A. § 2254 would be appropriate." <u>Alvarez v. Wainwright</u>, 607 F.2d 683, 685 (5th Cir. 1979)[7] (alteration in original) (quoting <u>Tribbitt v. Wainwright</u>, 540 F.2d 840, 841 (5th Cir. 1976)). A trial is rendered fundamentally unfair where the petitioner demonstrates prejudice sufficient to warrant relief under Rule 14, Federal Rules of Criminal Procedure (Rule(s)), or its state counterpart. <u>Id.</u> The Eleventh Circuit has instructed:

> For the denial of a motion to sever to be error under Rule 14(a), a defendant must demonstrate that failure to sever "result[ed] in compelling prejudice

---

[7] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

against which the district court could offer no protection." United States v. Walser, 3 F.3d 380, 385 (11th Cir. 1993). In Walser, we defined the test for compelling prejudice as

> whether under all the circumstances of a particular case it is within the capacity of jurors to follow a court's limiting instructions and appraise the independent evidence against a defendant solely on that defendant's own acts, statements, and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict.

> Id. at 386–387. And if a jury can do so, then no compelling prejudice results. Id. at 387. Even where there may be some risk of prejudice, "if the possible prejudice may be cured by a cautionary instruction severance is not required." Id. Further, "absent evidence to the contrary, we presume that the jury followed the court's instructions...." Id. (citing United States v. Badia, 827 F.2d 1458, 1466 (11th Cir. 1987)).

United States v. Bowers, 811 F.3d 412, 422 (11th Cir. 2016).

Here, the State filed a motion to consolidate the attempted burglary and burglary charges, arguing they were "based on the same act or transaction or on two or more connected acts or transactions." Doc. 11-15 at 34. The State further contended that the evidence was inextricably intertwined because both incidents occurred in the same neighborhood at

19

approximately the same time, and when Askew was apprehended for the attempted burglary, he possessed items that the victim in the burglary case reported stolen. Id. Persuaded by these arguments, the trial court granted the motion to consolidate. Id. at 33, 139. Later, counsel filed a motion to sever, which the trial court denied. Id. at 40–44, 147.

On the record before the Court, Askew has not demonstrated that consolidation of the cases rendered his trial fundamentally unfair. The trial court determined that Askew was not entitled to relief based on state law governing the consolidation and severance of charges. Id. at 139, 147. Further, the trial court instructed the jury as follows:

> A separate crime is charged in each count and while they have been tried together each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crime charged.

Doc. 11-15 at 62. A jury is presumed to follow the trial court's instructions. See, e.g., Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."). And, Askew points to no evidence suggesting the State's arguments or presentation of evidence at trial prevented the jury from

following the Court's instructions. Accordingly, Askew is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

As Ground Two, Askew argues that the trial court erred when it denied the defense's motion to exclude <u>Williams</u> Rule evidence, a black bag containing stolen property, from the attempted burglary trial. Petition at 15–16. According to Askew, the "collateral crime evidence" only served to demonstrate bad character or propensity, and the prejudicial effect of the evidence substantially outweighed its probative value. <u>Id.</u> at 17. Askew raised a substantially similar claim on direct appeal, Doc. 11-18 at 16–18; the State filed an answer brief, Doc. 11-19 at 9–11; and the First DCA per curiam affirmed Askew's convictions and sentences without a written opinion, Doc. 11-21 at 2.

The Court finds Askew did not fairly present the federal nature of the claim raised in Ground Two to the state court. Although Askew cited to the Fourteenth Amendment in the issue statement portion of his initial brief, Doc. 11-18 at 16, he failed to substantively argue that the trial court violated his federal constitutional rights, <u>id.</u> at 16–18. Askew presented his arguments on direct appeal only in the context of Florida evidentiary law. <u>Id.</u>

21

Therefore, he did not alert the state court to the federal nature of his claim, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Askew has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Therefore, relief on the claim in Ground Two is due to be denied.

Nevertheless, even if Askew's claim is not procedurally barred, he is still not entitled to relief. To the extent Askew asserts that the trial court erred under Florida law when it admitted the black bag as evidence, the claim presents an issue purely of state law not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of Askew's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, insofar as Askew alleges that the trial court's evidentiary ruling violated Florida law, this

22

claim provides no basis for federal habeas relief. See Estelle, 502 U.S. at 67–68.

Assuming arguendo Askew raises a properly exhausted, federally cognizable claim, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Askew is not entitled to federal habeas relief on the claim in Ground Two.

## C. Ground Three

In Ground Three, Askew contends the trial court erred when it imposed consecutive HFO sentences. Petition at 18. According to Askew, Florida law prohibited the imposition of consecutive sentences in this case because the offenses occurred during the same criminal episode. Id. at 19. Askew raised a substantially similar claim on direct appeal, Doc. 11-18 at 19–20; the State filed an answer brief, Doc. 11-19 at 12–14; and Askew replied, Doc. 11-20 at

6–8. The First DCA per curiam affirmed Askew's convictions and sentences without a written opinion, Doc. 11-21 at 2.

As with the claims in Grounds One and Two, Askew failed to properly exhaust the claim in Ground Three because he did not fairly present the federal nature of it to the state court. In his initial brief on direct appeal, Askew cited to the Fifth Amendment in his issue statement, Doc. 11-18 at 19; however, he did not substantively argue that the trial court violated his federal constitutional rights, id. at 19–20. Moreover, in his reply brief, Askew included arguments solely based on Florida law. Doc. 11-20 at 6–8. As such, Askew did not alert the state court to the federal nature of his claim, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Askew has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Therefore, Ground Three is due to be denied.

Nevertheless, even if Askew's claim is not procedurally barred, he is not entitled to relief. To the extent Askew asserts that the trial court erred under Florida law when it imposed consecutive HFO sentences, the claim presents an issue purely of state law not cognizable on federal habeas review.

24

See Swarthout, 562 U.S. at 219 (noting that the purpose of habeas review is to determine whether a person's custody is in violation of the Constitution or laws or treaties of the United States). Therefore, to the extent Askew alleges in Ground Three that the trial court violated Florida law, his claim provides no basis for federal habeas relief. See Estelle, 502 U.S. at 67–68. Accordingly, Askew is not entitled to relief on the claim in Ground Three.

### D. Ground Four

Next, Askew asserts counsel was ineffective when she failed to properly advise Askew about his right to testify. Petition at 20. He alleges that counsel advised him if he testified at trial, "the jury would 'automatically' learn the nature of his past crimes and the State would 'automatically' go into the specifics of his prior record on cross[-]examination." Id. at 21. According to Askew, if counsel had not misadvised him, he would have testified about how he found the black bag on a trash pile. Id.

Askew raised a substantially similar claim as ground one of his Rule 3.850 Motion. Doc. 11-39 at 7–8. Following an evidentiary hearing, the postconviction court denied the claim, stating in pertinent part:

> In Ground One of his motion, defendant argues that his defense counsel was ineffective for misadvising him that if he testified at trial the jury would automatically learn the nature of his past

25

crimes and the State could go into the specifics of his prior record on cross-examination.

At the evidentiary hearing, Defendant's attorney, Ms. Christina Romero Downes (Ms. Romero as of when she previously represented the Defendant) testified that she never advised Defendant that if he testified that the jury would automatically learn the nature and circumstances of his prior convictions because that is not the law. The court finds Ms. Downes' testimony to be credible. In particular, the court accepts her testimony that she met with Defendant on numerous occasions prior to trial to prepare for trial, including discussions as to his decision on whether or not he should testify.

The first claim of Defendant's 3.850 Motion is denied due to Defendant's failure to meet the required burden of proof at the evidentiary hearing held on July 26, 2019.

Doc. 11-52 at 76 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 11-57 at 2.

To the extent that the First DCA decided this claim on the merits,[8] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to

---

[8] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Askew is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Askew's ineffectiveness claim is still without merit because the record supports the postconviction court's conclusion. After the evidentiary hearing concerning this issue, the postconviction court resolved the credibility issue in favor of believing counsel's testimony over that of Askew. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). In federal habeas review, a state court's factual determination is presumed correct unless the petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Askew has not rebutted the postconviction court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). As such, the postconviction court's factual findings which are

presumed correct refute the claim regarding counsel's alleged deficiencies in advising Askew about his right to testify. Given the postconviction court's credibility determination, his claim is wholly unsupported. Askew has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Four.

### E. Ground Five

As Ground Five, Askew argues counsel was ineffective when she failed to request a limiting instruction "at the time the evidence [black bag] concerning the burglary was introduced, while the Petitioner was on trial at the same time for an attempt[ed] burglary." Petition at 24. He alleges that, as a result of counsel's deficient performance, the black bag and its contents "became the sole feature of the State's presentation of evidence in [] [his] attempt[ed] burglary trial." Id. at 26.

Askew raised a substantially similar claim as ground two of his Rule 3.850 Motion. Doc. 11-39 at 8–9. The postconviction court denied relief, stating in pertinent part:

> Under Ground Two, Defendant alleges that counsel was ineffective for failing to request a limiting instruction when the evidence concerning his Burglary charge was introduced, and again at the

28

close of all the evidence. Specifically, Defendant
argues that because his Burglary and Attempted
Burglary charges were consolidated for trial,
counsel's failure to request the limiting instruction
prejudiced him in that the completed Burglary charge
"became the sole feature for the [D]efendant's
[A]ttempted [B]urglary trial to prove bad character
and propensity." When Defendant was arrested for
the Attempted Burglary, he was found in possession
of a black bag containing stolen goods from the
completed Burglary. Defendant now argues that,
absent the introduction of this bag and its contents,
there was no evidence presented that linked him to
the Attempted Burglary and that, therefore, had
counsel requested a limiting instruction at the time
the bag and its contents were introduced into
evidence, there is a reasonable probability that the
outcome of the trial would have been different.

In the instant case, the record reveals that
defense counsel made various objections to the
introduction of this black bag and its contents. On
December 3, 2009, counsel filed a Motion in Limine,
in which he opposed the State's "reference to the
Defendant possessing allegedly stolen items found
from a different burglary when he was arrested on
the [Attempted Burglary.]"

Following a hearing, that Motion was denied.
At that hearing, defense counsel specifically argued
that "[he didn't] think that the instruction on
separate crimes and considering each separately is
going to be enough to cure the prejudicial effect that
it will have." On December 7, 2009, counsel filed a
Motion for Severance of Counts, in which he
reiterated his arguments. Following another hearing,
that Motion was also denied. Additionally, on the day
of trial, during discussion of preliminary issues,

counsel unsuccessfully objected to the introduction of the black bag. Shortly after the black bag was introduced into evidence, counsel cross-examined the owner of the bag (who was also the victim of the completed Burglary). Immediately prior to the jury charge conference, defense counsel voiced objections to some of the jury instructions, including the portion of the Burglary instruction that states:

> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of the stolen property convince you beyond a reasonable doubt that the defendant committed the burglary.

However, the objection was overruled because, as the trial judge explained, "the First District Court of Appeal and the Florida Supreme Court has [sic] ruled on this paragraph and says [sic] that it is proper. . . . [T]he law requires me to do it so I'm going to do it."

Therefore, counsel was not deficient. See Rodriguez v. State, 919 So. 2d 1252, 1272 (Fla. 2005); Thompson v. State, 759 So. 2d 650, 665 (Fla. 2000) ("[T]rial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient."); see also Willacy v. State, 967 So. 2d 131, 140 (Fla. 2007) ("[C]ounsel is not ineffective for failing to make a futile objection." (citing Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986))). Consequently, counsel was not ineffective and Defendant's second ground for relief is denied.

Doc. 11-50 at 72–74 (record citations omitted). The First DCA per curiam affirmed the denial of relief. Doc. 11-42 at 2–3.

To the extent that the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Askew is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of this claim is not entitled to deference, Askew's ineffectiveness claim is without merit. During closing argument, counsel emphasized that the jury should consider each count separately and a finding of guilty on one count should not affect their verdict on the other count. Doc. 11-15 at 368–69. The trial court then instructed the jury as follows:

> A separate crime is charged in each count and while they have been tried together <u>each crime and the evidence applicable to it must be considered separately</u> and a separate verdict returned as to each.

31

> A finding of guilty or not guilty as to one crime must
> not affect your verdict as to the other crime charged.

Id. at 62 (emphasis added). Askew neither explains how the above instruction was insufficient nor details what alternative instruction counsel should have suggested. Nevertheless, given that the jurors received a limiting instruction and jurors are presumed to follow instructions, the Court finds counsel did not perform deficiently.

Even assuming arguendo counsel performed deficiently, Askew has not shown any resulting prejudice because substantial evidence—other than the black bag—supported the armed burglary charge. Harold Burleigh testified that on September 9, 2010, at approximately 4:25 a.m., he observed a man wearing dark clothes and a red hat attempt to break into his neighbor, Tracey Chambers's, vehicle. Doc. 11-15 at 207, 209–10. According to Burleigh, the individual was "leaning up against the back door, like he was pressing against the car, the back glass on the passenger side." Id. at 210. Burleigh went inside his house to call 911 at which time he heard glass break. Id. He reported the incident and provided the individual's description. Id. at 211–14. Burleigh estimated that he only spent "a couple minutes" inside the house. Id. at 235. Afterwards, he returned outside and witnessed the individual walk across the street, get on a bicycle, and start to ride down the street. Id.

32

at 216–17. Burleigh continued to watch the individual until law enforcement arrived at the scene. Id. at 217–25. Burleigh identified Askew as the individual who attempted to break into the vehicle, and law enforcement detained Askew. Id. at 12, 225–26 271–72.

When law enforcement apprehended him, Askew was wearing a red hat and dark clothes, as well as riding a bicycle. Id. at 270–71, 280–81. Officer Christopher Brown stated that he did not see anyone else in the area who was wearing a red hat or was riding a bicycle at that time. Id. at 284. Chambers testified that she had parked her vehicle in the driveway at approximately 8:00 p.m. on September 9, 2010. Id. at 263. Law enforcement knocked on her door the next morning, at which time she went outside with them to look at her vehicle. Id. at 263, 265. Chambers did not have any missing items, but the passenger-side rear window was broken. Id. at 265–66. She testified that she neither knew Askew, nor gave him permission to enter her vehicle. Id. at 266. Considering the above evidence, no reasonable probability exists that the outcome of the case would have been different if counsel had requested a limiting instruction. Askew's ineffectiveness claim is without merit because he has shown neither deficient performance nor

33

resulting prejudice. Accordingly, Askew is not entitled to federal habeas relief on the claim in Ground Five.

## F. Ground Six

Next, Askew argues that counsel was ineffective when she failed to investigate and file a motion to suppress the black bag and its contents. Petition at 27. He asserts that law enforcement illegally stopped and arrested him based on an unreliable "be on the look out" warning (BOLO). See id. at 28–29. According to Askew, "the said BOLO was vague in itself and only gave a general description, not an identification . . . ." Id. at 29. Askew contends that if counsel had acted as he suggests she should have, a reasonable probability exists that the outcome of the proceeding would have been different. Id. at 31.

Askew raised a substantially similar claim as ground three of his Rule 3.850 Motion. Doc. 11-39 at 10–12. The postconviction court denied relief, explaining:

> Initially, as discussed earlier, this Court notes that on December 3, 2009, defense counsel filed a Motion in Limine, in which he sought "to prohibit . . . [a]ny and all reference to the Defendant possessing allegedly stolen items from a different burglary when he was arrested on the instant case." This Court further notes that, to the extent Defendant is challenging the sufficiency of the evidence, he may

34

not do so in a motion for postconviction relief. <u>Betts v. State</u>, 792 So. 2d 589 (Fla. 1st DCA 2001); <u>Jackson v. State</u>, 640 So. 2d 1173 (Fla. 2d DCA 1994).

As for the substantive issues raised in the instant ground, where a defendant alleges that counsel was ineffective for failing to litigate a Fourth Amendment claim, he must also prove that the Fourth Amendment claim is meritorious and that a motion to suppress based on the claim would have been granted and the evidence would have been suppressed. <u>Kormondy v. State</u>, 983 So. 2d 418, 430 (Fla. 2007); <u>Zakrzewski v. State</u>, 866 So. 2d 688, 694 (Fla. 2003); <u>State v. Freeman</u>, 796 So. 2d 574, 578 (Fla. 2d DCA 2001) (holding that because suppression would not have properly been granted, defendant did not establish, as required by <u>Strickland</u> that he was prejudiced by counsel's failure to file a motion to suppress) (citing <u>Gettel v. State</u>, 449 So. 2d 413, 414 (Fla. 1984))).

It is firmly entrenched in Fourth Amendment jurisprudence that items obtained as a result of an unreasonable search are inadmissible at trial. Generally, an unreasonable search is one done without a warrant. However, it is also a well-settled exception that a search incident to a lawful arrest is considered reasonable and, thus, constitutionally permissible. <u>Jenkins v. State</u>, 978 So. 2d 116, 125 (Fla. 2008) (citing <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.")). The validity of such a search incident to arrest is unaffected by the timing of the search in

35

relation to the formal arrest. <u>State v. Clark</u>, 721 So. 2d 1202, 1206 (Fla. 3d DCA 1998). Indeed, "it is permissible for a search incident to arrest to be conducted prior to the actual arrest, provided that probable cause to arrest existed prior to the search, and the fruits of the search were not necessary to establish the probable cause." <u>Jenkins</u>, 978 So. 2d at 125 (citing <u>Rawlings v. Kentucky</u>. 448 U.S. 98, 111 & n.6 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.")). Thus, it is the temporal relationship between the probable cause for arrest and the search - not the formal arrest and the search - that is determinative for purposes of suppression.

## A. The Existence of Reasonable Suspicion to Stop Defendant

Before turning to the deciding issue of whether and when the probable cause to arrest arose in the instant case, this Court will briefly address Defendant's related challenge to the lawfulness of his stop. Here, Defendant was stopped by police because he matched the description of a burglary suspect from a B.O.L.O., which was issued based on a 911 call. Because the 911 caller, Mr. Harold Burleigh, provided his last name and phone number to the 911 operator, he was a citizen-informant. <u>See</u> <u>J.L. v. State</u>, 727 So. 2d 204, 206 (Fla. 1998) (stating that a citizen-informant is "an identifiable citizen who observes criminal conduct and reports it, along with his own identity to the police"); <u>Hadley v. State</u>, 43 So. 3d 113 (Fla. 3d DCA 2010) (classifying informant who provided her name and phone number to police as a citizen-informant); <u>see also Aguilar v. State</u>, 700 So. 2d 58, 59 (Fla. 4th DCA 1997) (stating that

36

citizen-informants are "normally motivated by the desire to further justice, not by pecuniary gain . . . [and are] usually unrelated third parties who happen to find themselves in a position of victim or witness to criminal conduct"). Therefore, the information in the 911 call and the subsequent B.O.L.O. provided the officers with reasonable suspicion to justify detaining Defendant. See State v. Maynard, 783 So. 2d 226, 228 (Fla. 2001) ("[I]f the caller qualifies as a citizen informant, then the information from the tip . . . would be considered at the high end of the reliability scale, sufficient by itself to justify a Terry stop."); see also United States v. Hensley, 469 U.S. 221 (1985) (holding that when a police communique has been issued on the basis of articulable facts supporting a reasonable suspicion, any authorized officer may make an investigatory stop on the basis of that bulletin); Berry v. State, 493 So. 2d 1098 (Fla. 4th DCA 1986) (officer receiving a radio transmission to detain a certain individual has authority to stop the person described). Thus, Defendant was lawfully stopped.

## B. The Existence of Probable Cause to Arrest Defendant

In order to be reasonable under the Fourth Amendment, a warrantless arrest must be supported by probable cause. See Michigan v. Summers, 452 U.S. 692, 700 (1981); see also Jenkins, 978 So. 2d at 121; Popple v. State, 626 So. 2d 185, 186 (Fla. 1993). "The probable cause standard for a law enforcement officer to make a legal arrest is whether the officer has reasonable grounds to believe the person committed a felony." Blanco v. State, 452 So. 2d 520, 523 (Fla. 1984); see § 901.15(2), Fla. Stat. (2009) (stating that an officer may arrest a person without a warrant when a felony has been committed and he or

she reasonably believes that the person committed it). This probable cause determination is based on the totality of the circumstances, including "the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed." Benefield v. State, 160 So. 2d 706, 708 (Fla. 1964): Clark, 721 So. 2d at 1205 (quoting State v. Russell, 659 So. 2d 465, 468 (Fla. 3d DCA 1995)).

In the instant case, Defendant was arrested soon after the B.O.L.O. was issued in response to a 911 call by an eyewitness to a car burglary in progress. The 911 call came in at approximately 4:25 A.M. Based on the call, the police were dispatched to the scene at approximately 4:35 A.M., and arrived there at about 4:39 A.M. When he first arrived on the scene, Officer Griffis observed a person matching the B.O.L.O. suspect's physical description and wearing the same dark clothing and red hat described in the B.O.L.O., riding a bicycle down the street at the exact location of the B.O.L.O. In pursuing the suspect on foot, Officer Griffis encountered the eyewitness, who had been watching the suspect since hanging up with the 911 operators, and who pointed him out to Officer Griffis. Meanwhile, Officer Brown arrived on the scene in his patrol car and independently observed a person matching the B.O.L.O. suspect's description. Based on this, Officer Brown detained that person. The eyewitness observed the events as they unfolded and, in particular, observed the officer approach the vicinity of the suspect a few houses away, heard the officer shout "Get on the ground," and emerge back into view with Defendant in custody. At the time Defendant was detained, there was no one else

outside other than Defendant, the eyewitness, and the responding officers.

After Defendant was detained, Officer Griffis completed his investigation by, among other things, interviewing the eyewitness. The eyewitness told Officer Griffis everything that he had seen, including Defendant standing near his neighbor's car when he heard the car window break, and Defendant reaching into the car shortly thereafter. Specifically, the eyewitness said that he had observed Defendant push against the car window, as if he was trying to break it. The eyewitness knew the car did not belong to Defendant because it was parked in his neighbor's driveway and he knew his neighbor. When the eyewitness went to call the police, he heard a popping noise that sounded like glass breaking. Upon inspection, Officer Griffis observed the broken window and spoke to the owner of the car, Tracey Chambers, who stated that she had locked the car the night before and that some items from the car were missing.[9]

Based on the totality of these circumstances, the officers had reasonable grounds to believe Defendant committed the burglary[10] and, therefore, Defendant's arrest was supported by probable cause. See Blanco, 452 So. 2d at 523; see also State v. Cuomo, 43 So. 3d 838 (Fla. 1st DCA 2010) (finding

---

[9] The postconviction court cites to a portion of the trial transcript in which Chambers testified none of the items from her vehicle were missing. Doc. 11-15 at 266. As such, the Court presumes the postconviction court inadvertently misstated the record. The misstatement does not undermine the reasoning of the postconviction court or the issue of whether there was probable cause to arrest Askew.

[10] Although the State charged Askew with the attempted burglary of Chambers's vehicle, law enforcement arrested him for burglary. See Doc. 11-15 at 11.

officers had probable cause to arrest the defendant for a shooting where a car similar to the one he was driving was seen parked near the victim's residence shortly before the shooting, gunshots were heard as the car sped away, the defendant was the victim's ex-boyfriend, and within half an hour of the shooting, the defendant was pulled over four or five miles from the shooting); Clark, 721 So. 2d 1202 (finding officers had probable cause to arrest the defendant for burglary where he was detained only ten minutes after the homeowner called in the burglary to the police, the defendant was stopped only five blocks from the burglary, the defendant matched the description of the suspect, and it was early morning and no one else was in the area when defendant was stopped). Moreover, assuming arguendo that the officers did not have probable cause to arrest Defendant for the burglary, they had sufficient probable cause to arrest him for Criminal Mischief under section 901.15(9)(b), Florida Statutes (2009). Accordingly, Defendant was lawfully arrested.

<u>C. The Validity of the Search of Defendant</u>

As stated earlier, "it is permissible for a search incident to arrest to be conducted prior to the actual arrest, provided that probable cause to arrest existed prior to the search, and the fruits of the search were not necessary to establish the probable cause." Jenkins, 978 So. 2d at 125 (citing Rawlings, 448 U.S. at 111 & n.6 ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.")); Clark, 721 So. 2d at 1206.

As determined supra, probable cause to arrest Defendant existed based upon the B.O.L.O. and the

40

ensuing police investigation. This probable cause existed both before the officers searched the black bag Defendant was carrying, and independent of the items they discovered in the bag. Therefore, whether the officers searched the bag shortly before or after they formally arrested Defendant is of little consequence; the search was lawful and fruits of the search were admissible at trial. See Rawlings, 448 U.S. at 111 & n.6; Jenkins, 978 So. 2d at 125; Clark, 721 So. 2d at 1206.

Based on all of the above, there was substantial evidence to support the conclusion that a motion to suppress based on Defendant's allegations would have been denied. Consequently, Defendant has failed to show that he suffered prejudice through counsel's failure to file such a motion. See Freeman, 796 So. 2d at 578 (citing Gettel, 449 So. 2d at 414 (holding that because suppression would not have properly been granted, the defendant did not establish, as required by Strickland, that he was prejudiced by counsel's failure to file a motion to suppress)); see also Lugo v. State, 3 So. 3d 1 (Fla. 2008) (holding that an attorney is not ineffective for failing to file a fruitless motion). Accordingly, Ground Three is denied.

Doc. 11-50 at 74–80 (emphasis in original) (record citations omitted). The First DCA per curiam affirmed the denial of relief. Doc. 11-42 at 2–3.

To the extent that the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's

41

adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Askew is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Askew's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Law enforcement "w[ere] dispatched to a burglary to a conveyance, in progress. . . . [T]he suspect was a black male wearing a red hat and a black t-shirt." Doc. 11-15 at 12. Burleigh, a neighbor of the vehicle's owner, reported the burglary in progress to 911 and provided the suspect's description. Id. at 211–14. He continued to watch the suspect until law enforcement arrived at the scene. Id. at 215–25. Burleigh identified the suspect, Askew, to law enforcement, who detained him. Id. at 12, 225–26 271–72. Askew wore a red hat and dark clothes and rode a bicycle. Id. at 270–71, 280–81. Law enforcement observed the vehicle had a broken window. Id. at 273.

Considering the totality of the circumstances, counsel did not have a legal basis to file a motion to suppress on the grounds that Askew suggests.

Law enforcement not only had reasonable suspicion to detain Askew, <u>see</u> <u>Navarette v. California</u>, 572 U.S. 393, 396–97 (2014), but also probable cause to arrest him for burglary, <u>see</u> <u>Washington v. Howard</u>, 25 F.4th 891, 902 (11th Cir. 2022). Law enforcement's search of the black bag was also proper as one incident to arrest. <u>See</u> <u>United States v. Jean</u>, 636 F. App'x 767, 769 (11th Cir. 2016)[11] (per curiam) (concluding that search of defendant's book bag was within the scope of a lawful search incident to arrest where law enforcement found the bag on his person at the time of arrest). Therefore, counsel was not deficient when she failed to file a meritless motion. <u>See</u> <u>Pinkney v. Sec'y, DOC</u>, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). For this same reason, Askew has not shown any resulting prejudice. His ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, Askew is not entitled to federal habeas relief on the claim in Ground Six.

---

[11] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

### G. Ground Seven

As Ground Seven, Askew alleges counsel was ineffective when she failed to investigate and file a motion to suppress Burleigh's in-court and out-of-court identifications of Askew as the burglar. Petition at 31. He contends that law enforcement failed to conduct a lineup, showup, or a photospread when they apprehended him. Id. at 32. Moreover, Askew asserts "the lighting [in the area] was poor . . . and the State's eyewitness wears prescription glasses . . . but was not wearing them the night of the alleged crime," among other deficiencies with the identifications. Id. at 33.

Askew raised a substantially similar claim as ground four of his Rule 3.850 Motion. Doc. 11-39 at 12–13. The postconviction court denied relief, stating:

> In Ground Four, Defendant alleges that counsel was ineffective for failing to research, investigate, and file a motion to suppress the in-court/out-of-court identification of him as the burglar. Specifically, Defendant alleges that the out-of-court identification was unreliable in that no line up, show up, or photo spread was ever conducted, and because no fingerprint or DNA evidence linked him to the crimes. Defendant alleges that the in-court identification was unreliable because the lighting at the crime scene was poor; the eyewitness required prescription glasses but was not wearing them either on the night of the incident or the day of trial; the eyewitness observed the suspect from a distance of

44

150 yards away; the eyewitness took his eyes off the suspect when he went inside his home to call the police; the eyewitness' trial testimony differed slightly from the officers' testimony regarding how Defendant was detained; at trial, the eyewitness did not recognize photographs of Defendant's bicycle and clothes from that night; at trial, the eyewitness was not wearing his prescription glasses when he identified Defendant; and when the eyewitness identified Defendant at trial, the judge said, "I don't know about the word correctly . . . The record will so reflect that he pointed out the defendant."[FN 2] Defendant alleges prejudice because his whole defense was that he was not the person who committed the Burglary and Attempted Burglary.

In essence, Defendant is challenging the validity and sufficiency of the evidence against him, something that he may not do in a motion for postconviction relief. Betts, 792 So. 2d 589;[12] Jackson, 640 So. 2d 1173.[13] Nor may he seek to avoid this procedural bar by couching his allegations in terms of ineffective assistance of counsel. See Arbelaez v. State, 775 So. 2d 909 (Fla. 2000) (stating the defendant "may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel"); Cherry, 659 So. 2d 1069;[14] Chandler v. State, 634 So. 2d 1066 (Fla. 1994); Lopez v. Singletary, 634 So. 2d 1054 (Fla. 1994); Torres-Arboleda v. Dugger, 636 So. 2d 1321 (Fla. 1994); Swafford v. State, 569 So. 2d 1264 (Fla. 1990); Medina, 573 So. 2d 293.[15] As such, Ground Four is denied.

---

[12] Betts v. State, 792 So. 2d 589 (Fla. 1st DCA 2001).

[13] Jackson v. State, 640 So. 2d 1173 (Fla. 2d DCA 1994).

[14] Cherry v. State, 659 So. 2d 1069 (Fla. 1995).

[15] Medina v. State, 573 So. 2d 293 (Fla. 1990).

> [FN2] Prior to the trial judge uttering this statement,
> the Assistant State Attorney had said, "at this time
> the State would ask the record to reflect the witness
> has correctly identified the defendant." The
> prosecutor then corrected herself by saying, "[t]hat he
> identified him for the record." Thus, a full and fair
> reading of the context of the trial judge's comment
> indicates that the judge was merely expressing
> concern with the prosecutor's turn of phrase, not with
> the witness' in-court identification of Defendant.

Doc. 11-50 at 80–81 (record citations omitted). The First DCA per curiam affirmed the denial of relief. Doc. 11-42 at 2–3.

It appears the postconviction court denied this claim based on an independent and adequate state procedural ground. The postconviction court determined that Askew challenged the sufficiency of the evidence against him; however, such a claim could not be raised in a Rule 3.850 motion. See Childers v. State, 782 So. 2d 946, 947 (Fla. 4th DCA 2001) ("Appellant's challenge to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under rule 3.850."); Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). The procedural requirements of Rule 3.850 constitute independent and adequate state procedural grounds for rejecting a

claim. <u>LeCroy v. Sec'y, Fla. Dep't of Corr.</u>, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005). However, Respondents have failed to assert the procedural bar, <u>see generally</u> Response, and in failing to do so, may have waived the defense, <u>Smith v. Sec'y, Dep't of Corr.</u>, 572 F.3d 1327, 1339–40 (11th Cir. 2009) (noting that if petitioner raised the claim in state court but not at the time or in the manner required by state procedural rules, the state may waive the resulting procedural bar by failing to assert it).

Nevertheless, the Court finds that this ineffectiveness claim is without merit. At trial, Burleigh testified in pertinent part:

> Q    What happened when you first walked out?
>
> A    When I first walked out, he done went by my house.
>
> Q    Who is he?
>
> A    The –
>
> Q    The man with the red hat?
>
> A    Yes.
>
> Q    Okay.
>
> A    Whenever he walked out – whenever he rode by, no sooner did he pass the corner, I seen the police car pull up. And the

47

policeman was looking at him and I pointed at the man on the bike.

Q    Okay. So you pointed to the man on the bike? Mr. Burleigh, would you be able to identify the man with the red hat if you were to see him in court today?

A    Yes, I would.

Q    And do you see this person who you saw with the red hat on here in court today?

A    Yes, I do.

Q    Could you please tell us where he is sitting and what he is wearing?

A    He is sitting in the middle wearing a tan shirt, a brown tie, and I think black pants.

Ms. Wolfson:[16]    Your Honor at this time the State would ask the record to reflect the witness has correctly identified the defendant.

The Court:    I don't know about the word correctly.

Ms. Wolfson:    That he identified him for the record.

The Court:    The record will so reflect that he pointed out the defendant.

---

[16] Assistant State Attorney Erin Wolfson.

48

Doc. 11-15 at 224–25. In support of his argument that counsel was ineffective when she failed to file a motion to suppress Burleigh's identification, Askew cites to <u>Neil v. Biggers</u>, 409 U.S. 188 (1972), which recognizes that the admission of an out-of-court identification violates due process where law enforcement uses an identification procedure that is unnecessarily suggestive and creates a substantial risk of misidentification. However, based on the record, it appears that law enforcement did not employ any kind of identification procedure, let alone a suggestive one, and Burleigh, unprompted, identified Askew as the suspect. As such, Askew's objections are more appropriately directed to the weight, not the admissibility, of the identification.

Notably, counsel challenged Burleigh's identification during trial. Counsel cross-examined Burleigh about the lighting in the area and his eyesight, as well as whether law enforcement conducted a showup or photospread so he could identify the suspect Doc. 11-15 at 228–32, 251–52. During closing argument, she emphasized law enforcement's failure to conduct either procedure in this case. <u>Id.</u> at 368. Considering the above, a motion to suppress the out-of-court identification on the grounds identified by Askew would have been unsupported by the law.

49

As to the in-court identification, the record reflects Burleigh identified Askew as the individual who he saw break into the vehicle. The trial court did not conclude that Burleigh "incorrectly" identified Askew, but rather the trial court objected to the prosecutor's language. As such, counsel was not deficient when she failed to file a meritless motion to suppress on this basis. See Pinkney, 876 F.3d at 1297. Accordingly, Askew is not entitled to relief on the claim in Ground Seven.

### H. Ground Eight

In Ground Eight, Askew asserts that the trial court lacked jurisdiction to convict and sentence him. Petition at 34. Pursuant to Florida Rule of Criminal Procedure 3.140(g), "[a]n information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney . . . certifying that he or she has received testimony under oath from the material witness or witnesses for the offense." Askew contends that in this case, the prosecutor failed to receive testimony under oath from the material witnesses. See Petition at 37–38. He maintains "the charging information[s] w[ere] based solely on the police report." Id. at 37. Askew argues, therefore, the informations were defective and deprived the trial court of jurisdiction. Id. at 39.

50

Askew raised a substantially similar claim as ground five of his Rule 3.850 Motion. Doc. 11-39 at 14–17. The postconviction court denied relief, stating:

> In Ground Five, Defendant alleges that the Informations were based solely upon the police report, and not upon the sworn testimony of a material witness as required by Florida Rule of Criminal Procedure 3.140(g). Defendant argues that this amounted to fraud on the Court because, in signing the Informations, the prosecutor certified that she had taken sworn testimony from material witnesses prior to filing them. Defendant also argues that because the Informations were defective in this manner, the trial court lacked subject matter jurisdiction over his case. As a result, Defendant submits that his judgment and sentence are null and void.
>
> Generally, criminal jurisdiction is determined solely by the charge(s) made in the face of the information or indictment. McLean v. State, 2 So. 5 (Fla. 1887); State v. Vazquez, 450 So. 2d 203, 204 (Fla. 1984). When a charging document fails to show that a court has jurisdiction, a conviction based on that charging document is void. Ex parte Reed, 135 So. 302 (Fla. 1931 ); Pope v. State, 268 So. 2d 173 (Fla. 2d DCA 1972), cert. discharged, State v. Pope, 283 So. 2d 99 (Fla. 1973).
>
> Yet, as long as an information does not wholly fail to state a crime, a technical defect in an information is waived if no objection was timely made. State v. Burnette, 881 So. 2d 693, 694 (Fla. 1st DCA 2004); see also State v. Wimberly, 459 So. 2d 456 (Fla. 5th DCA 1984) (holding that where an

information was merely imperfect or imprecise, the failure to timely file a motion to dismiss waived the defect). If a defendant challenges an information after the prosecution has rested, the defendant must show that the information was fundamentally defective. See Ford v. State, 802 So. 2d 1121, 1130 (Fla. 2001); Burnette, 881 So. 2d at 694.

In the instant case, the Informations properly charged Defendant with Attempted Burglary of a Structure or Conveyance, and Burglary of a Structure or Conveyance. That is, each Information contained a sufficiently detailed allegation of the essential elements of the respective charges, including specific references to the appropriate sections of the criminal code, Defendant's name, and the time and place of the commission of the offenses. Therefore, the Informations were not fundamentally defective, and properly conferred subject matter jurisdiction upon this Court. See Fla. R. Crim. P. 3.140(*o*) ("No . . . information . . . shall be dismissed . . . unless . . . [it is] so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.")[.] Accordingly, Defendant's claim is without merit and Ground Five is denied.

Doc. 11-50 at 81–83 (record citations omitted). The First DCA per curiam affirmed the denial of relief. Doc. 11-42 at 2–3.

Insofar as Askew challenges the trial court's jurisdiction because the information allegedly failed to conform with Florida Rule of Criminal Procedure 3.140(g), his claim presents a state law issue that is not cognizable

52

on federal habeas review. <u>See</u> <u>Estelle</u>, 502 U.S. at 67. As previously discussed, on federal habeas review, the Court must determine whether Askew's custody violates the United States Constitution or the laws or treaties of the United States. <u>See</u> <u>Swarthout</u>, 562 U.S. at 219. Askew does not raise such a claim in Ground Eight.

Even assuming Askew brought a federal constitutional claim, and to the extent that the First DCA decided this claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Askew is not entitled to relief on the basis of this claim.

If the appellate court's adjudication of the claim is not entitled to deference, Askew's claim is still without merit. A defective information claim is cognizable on federal habeas review only when the charging document is so deficient that it deprives the convicting court of jurisdiction. <u>DeBenedictis v.</u>

53

<u>Wainwright</u>, 674 F.2d 841, 842 (11th Cir. 1982). A charging document is legally sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." <u>United States v. Jordan</u>, 582 F.3d 1239, 1245 (11th Cir. 2009) (internal quotation marks omitted).

Here, the informations met the minimum requirements for invoking the jurisdiction of the trial court. They include Askew's name and describe the dates and locations of the offenses. Docs. 11-15 at 24; 11-16 at 22. They also state the statutory basis for each count and set forth the elements of armed burglary and burglary. <u>Id.</u> The informations are not so defective that they deprived the trial court of jurisdiction. <u>See</u> <u>DeBenedictis</u> 674 F.2d at 842. Accordingly, Askew is not entitled to federal habeas relief on the claim in Ground Eight.

## VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Askew seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes

"a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Askew "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

55

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Askew appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of January, 2024.

MARCIA MORALES HOWARD
United States District Judge

56

Jax-9 12/4

c:    Carver Thomas Askew, #292607
       Counsel of record